[L. A. No. 678. Department Two.—September 5, 1900.]

W. F. SECHRIST et al., Appellants, v. RIALTO IRRIGA-
TION DISTRICT et al., Respondents.

PLEADING—ORDER UPON DEMURRER—LIMITED RULING—REVIEW UPON APPEAL.—The court cannot limit its order upon demurrer by sustaining it in part and overruling it in part, so as to deprive the demurrants of the benefit of any of the grounds assigned; and upon appeal by the plaintiff from a judgment rendered upon demurrer to the complaint, which was sustained as to the general demurrer, and overruled in other respects, the ruling made will be considered as an entirety, and the judgment must be affirmed if the demurrer is well taken upon any of the grounds assigned, regardless of the reasons assigned by the court below for its order.

ACTION TO CANCEL BONDS OF IRRIGATION DISTRICT—STATUTE OF LIMITATIONS—DEMURRER TO COMPLAINT.—In an action to cancel the bonds of an irrigation district, where any part of the cause of action alleged is not barred by the statute of limitations, a demurrer to the complaint pleading the statute is properly overruled. The statute does not begin to run against such cause of action from the date of the order for the issuance of the bonds, nor from the date of a contract therefor, but only from the date of the delivery of the bonds for a valuable consideration, and as to any bonds delivered within the statute and bonds not issued the cause of action is not barred.

ID.—COMPLAINT BY TAXPAYERS—OFFER OF RESTITUTION OF CONSIDERATION OF BONDS—MAXIM OF EQUITY INAPPLICABLE.—A complaint by persons who are land owners and taxpayers in an irrigation district to cancel the bonds of the district which have been illegally ordered to be issued, and who, in the nature of the case, are unable to restore the consideration received by the district for the issuance of the bonds, need not aver or show an offer of such restitution by the plaintiffs or by the district. In such case, the maxim that "he who seeks equity must do equity" is inapplicable. The cause of action is not one for rescission; and the taxpayers are not required to do equity as a condition of the relief sought.

ID.— EQUITIES OF BONDHOLDERS — SHOWING AT TRIAL — PROTECTION AGAINST DISTRICT.—If, at the trial. the bondholders should show sufficient equities against the district, assuming that the district and its directors are properly made defendants, such equities may be protected by the court while awarding to the plaintiff the relief sought.

ID.—DEMAND UPON DISTRICT NOT REQUIRED.—The taxpayers plaintiff are not required to make any demand upon the district to bring the action, and need not aver such demand in their complaint.

ID.—PARTIES—IRRIGATION DISTRICT AND DIRECTORS.—In order to secure the relief sought of restraining the levy of an assessment to pay the illegal bonds and to restrain the further disposition of unissued bonds, the district is both a proper and a necessary party defendant; and its directors are proper parties for the purpose of reaching and restraining the corporation.

ID.—JOINDER OF PLAINTIFFS.—The taxpayers plaintiff have a sufficient joint interest to be joined as plaintiffs.

ID.—NONJOINDER OF BONDHOLDERS.—Where the complaint makes several individuals and private corporations, holders of bonds that have been issued by the district, parties defendant, under allegations that they have no equities as against the district, a demurrer for nonjoinder of other bondholders is properly overruled. The bondholders are proper, but not necessary, parties; and though no decree would bind those not brought in, the court may grant relief as to all who are made parties to the action.

CXXIX. CAL.—41

APPEAL from a judgment of the Superior Court of San Bernardino County. John L. Campbell, Judge.

The facts are stated in the opinion.

Frick & Goodcell, for Appellants.

Shirley C. Ward, Gardiner, Harris & Rodman, Charles McFarland, R. H. F. Variel, Curtis & Curtis, Cramer M. Morris, E. R. Annable, T. C. Chapman, and H. Connor, for various Respondents.

CHIPMAN, C.—Action to have certain one thousand bonds of defendant district, in part issued and in part unissued, adjudged void; to compel each of certain defendants to disclose the bonds held by him, and to bring them into court to be canceled and destroyed, and meanwhile to restrain the transfer of such bonds; to enjoin the district from levying any assessment to pay any interest upon all or any of said bonds, and for general relief.

Defendants demurred to the complaint on several grounds. The court sustained the demurrers on the ground of insufficiency of facts and overruled them on all other grounds. Plaintiffs declined to amend, and defendants had judgment, from which plaintiffs appeal.

The plaintiffs are land owners and taxpayers in the defendant irrigation district and prosecute the action for the benefit of themselves and all other taxpayers of the district. The defendants are the district, its board of directors, and several individuals and private corporations, holders of bonds that have been issued by the district.

Appellants claim that the bonds are, upon the facts alleged in the amended complaint, absolutely void; that the defendant holders have no equities as against the district or the plaintiffs, and, if they have, those equities may be protected by proper decree; and in either case plaintiffs are entitled to all or some part of the relief prayed for.

The demurrers were upon the grounds of insufficiency of facts; that the action is barred by the statute of limitations; that plaintiffs have been guilty of laches and unreasonable delay in bringing the action, and some other grounds.

It is unnecessary to state the full scope of the very lengthy complaint in detail.   Respondents concede that the alleged infirmities of the bonds are fatal to their validity, and the demurrers admit that the respondents purchased the bonds with actual notice of their invalidity.   That the complaint states facts sufficient to constitute a cause of action may be assumed, and the judgment must be reversed unless some one of the grounds of demurrer can be sustained.   Such as are now relied on by respondent will have attention.

1. The effect of the order was to overrule the demurrers in their entirety.   The court could not so limit its order as to preclude the demurrants from their right to be heard here on any or all the grounds stated.   The effect of the order was to give a reason for sustaining the demurrers, but this court will affirm the order, if well taken, on any ground, regardless of the reasons assigned by the court below.   (*Wakeham v. Barker*, 82 Cal. 46.   See, also, *People v. Central Pac. R. R. Co.*, 76 Cal. 29, 43.)

2. It is urged that the action is barred by section 343 and subdivision 4 of section 338 of the Code of Civil Procedure. The complaint shows that the bond issue was voted upon by the electors of the district November 15, 1890; that on November 17, 1890, the board of directors canvassed the returns of the election, and on that day passed a resolution adopting their form and ordering that the bonds issue.   On November 21st the order was amended as to the number of bonds to be issued, and they were afterward signed, and all bore date November 17, 1890, two days after the election and on the day the votes were canvassed.

It is alleged that on December 10, 1890, the board, without lawful authority, entered into a written contract with the Semi-Tropic Land and Water Company, a corporation, by the terms of which said company agreed to develop and obtain a continuous flow of one thousand inches of water, measured under a four-inch pressure, from artesian wells to be constructed by said company upon lands outside said district, and agreed to construct pipe lines therefrom to the district in which to convey the water, and agreed to deed title to such water and pipe lines and right of way to the district, and in consideration

therefor the district agreed to transfer and deliver to said company all of said bonds; and it was agreed that the water and pipe lines and rights of way were to be delivered in installments from time to time as said water should be developed and said pipe lines constructed, and payment was to be made by a proportionate part of said bonds, and the contract was to be wholly performed within two years after its date.   It is alleged that when this contract was made that the company was not the owner of more than three hundred inches of water flowing from wells then developed, and that it was not possible by means of artesian wells or otherwise to obtain a continuous flow of over three hundred inches of water from the sources of supply referred to in the contract; that on December 22, 1890, the board, without authority, entered into another contract with the said company modifying said contract of December 10, 1890, as to some details, but not as to its general scope and purpose, nor as to the property to be delivered and conveyed, nor as to the price to be paid therefor, and purporting to ratify said contract of December 10th as modified, pursuant to which the company, on December 22, 1890, deeded to the district three hundred inches of water together with a pipe line conveying the same to the district, and thereupon the board, without authority, delivered to the company three hundred of said bonds of the par value of one hundred and fifty thousand dollars.   Then follows a series of allegations showing like modification of the contract of December 22, 1890, at different periods, under which the board delivered at different times to sundry persons sundry bonds, in consideration of conveyances to the district brought about by the company, and in consideration of work and labor performed by divers persons.

The complaint shows that bonds were delivered from time to time in successive years under the original contract and its several modifications, and for work done by others than the company, and that the last delivery of bonds was on March 2, 1897, making in all up to that time eight hundred and twenty-two bonds, and leaving still in the hands of the directors when the suit was brought, unissued and undisposed of, one hundred and seventy-eight bonds.

Respondent contends that because the bonds were ordered to be issued in November, 1890, and because the contract with the water company was made in December, 1890, the statute of limitations began to run in December, 1890, and as the suit was not commenced for seven years thereafter the action is barred both by the statute and by the laches of plaintiffs.

It is true that a right of action accrued to a land owner and taxpayer of the district as soon as the first delivery of bonds was made in 1890, and possibly even before, to restrain the issue, if the prior proceedings of the board were, as is admitted, illegal and void.   But it cannot be maintained that the bonds were issued in the sense of the statute until they were delivered for a valuable consideration.   It was said in *Brownell v. Greenwich*, 114 N. Y. 518, speaking of certain bonds in litigation: "They bear the date of March 25, 1871, and are presumed to have been executed at that time, but executing is not issuing, for they may be fully executed but never issued. . . . . The bonds had no legal inception, and could not become valid obligations aside from any other question, until actually delivered for a valuable consideration.   Under the circumstances, we think that the delivery of the bonds to the plaintiff determines the date when his bonds were issued."   The Wright act provides in section 15 that the bonds "shall be numbered consecutively as issued, and bear date at the time of their issue"; and section 16 provides that "the board shall sell said bonds from time to time, in such quantities as may be necessary and most advantageous, to raise money for the construction of said canals and works, the acquisition of said property and rights," etc.   These provisions clearly contemplate successive acts which from time to time may require the issue of bonds as the work progresses.   Section 42 provides that the board "shall have no power to incur any debt or liability whatever, either in issuing bonds, or otherwise, in excess of the express provision of this act," etc.   The statute of limitations certainly has not barred the action as to bonds issued within the limit of the statute and as to the bonds still unissued; nor can we see how laches can be asserted in failing sooner to bring the action as to these bonds, at least so far as should be determined on demurrer.   As to the bonds issued at earlier dates we ex-

press no opinion. The demurrers go to the entire issue of bonds, and cannot prevail unless all the bonds are barred either by the statute or by plaintiffs' laches.

3. But respondents invoke the maxim that he who seeks equity must do equity, and it is claimed that plaintiffs are not entitled to recover without first restoring or offering to restore to defendants the fruits or benefits of the transaction in question. It was alleged in the complaint, what must in the nature of the case necessarily be true, that "the plaintiffs have not, nor has either of them, any ownership, possession, or control of all or any part of the lands, water rights, and other property conveyed to or received by said district as hereinbefore alleged; nor have the plaintiffs, nor has either of them, any power, authority, or control over said district, or its board of directors, or its officers, and, therefore, these plaintiffs, in the event of the cancellation of said bonds or any of them or the granting of said restraining order, cannot return or offer to return, or cause to be returned, to the defendant bond holders or any of them, all or any part of said property, and these plaintiffs have not the means or ability to pay or cause to be paid, to such bond holders, all or any part of the value of said property." Respondent contends that this is no defense to the equitable requirement, for the inability of the plaintiffs to do equity is as fatal to equitable relief as their unwillingness to do equity would be. It is claimed that the case is similar to that of a mortgagor seeking to maintain ejectment against the mortgagee without first paying the mortgage debt, which it was held in *Spect v. Spect*, 88 Cal. 437,[1] he could not do. We can see no analogy between the case of a mortgagor and that of a taxpayer who seeks relief against bonds illegally issued by the district. The taxpayer always receives some equivalent or consideration, and he never has the title to or the possession or control of the consideration or of any property of the district and is never in a position to return any of it to the bond holder. But there can be no doubt of the right of the taxpayer to sue for appropriate relief without first doing equity, otherwise he would be deprived of all remedy, for he never

[1] 22 Am. St. Rep. 314.

would be able to do equity in the manner respondents claim that he should.

Assuming for the moment that at the trial the bond holders may show sufficient equities to entitle them to a return of the consideration paid, or to the property of the district purchased with their money, and assuming that the district and its directors are properly made parties defendants, we see no difficulty in having the equities of the bond holders fully protected in the action while giving plaintiffs the relief sought by them. We do not regard the action as one for rescission. Plaintiffs seek to restrain some of the defendants—for example, the district—from any further issue of bonds alleged to be illegally ordered to be issued; they seek to have the outstanding bonds canceled, among other reasons because they are a cloud upon plaintiffs' title; they seek to have that title quieted as against the adverse claim of these bond holders, for section 17 of the Wright act makes all the real property of the district liable to assessment to pay the principal and interest of the bonds and provides that the principal and interest shall be paid by revenue derived from annual assessments upon the real property of the district; and the action in part seeks to restrain the directors from making any assessment.

We are unable to perceive any difference between this case, in some of its features at least, and ordinary cases where relief is sought against an illegal tax, which is the ultimate relief here sought. Such cases are common and are maintained by a taxpayer without his restoring or offering to restore the consideration which the municipality has received. Such a case is *Chase v. City Treasurer, etc.*, 122 Cal. 540. (See, also, *Devine v. Board of Supervisors*, 121 Cal. 670.)

4. But it is contended that the action can be maintained only by the district, or if by a land owner under any circumstances, it is only after he has demanded of the district to bring the suit, and it has failed or refused to do so. No such demand was pleaded. The rule upon which this ground of demurrer is based may have some application to private corporations, although where the action is to restrain the governing body of even a private corporation from doing some threatened illegal act it would seem to be idle to demand of that body

to sue itself.   To restrain the levy of an assessment and to restrain the further disposition of bonds, not to speak of other relief sought, the district was both a proper and necessary party; it would fail as a plaintiff, for it could not have relief by the court when it had the remedy in its own hands by simply abstaining from doing the alleged illegal acts.   *Cogswell v. Bull*, 39 Cal. 320, relied on by respondents, was the case of a stockholder who sued, in his own name, the former directors of a private corporation for misappropriation of funds of the corporation.   It was held that before he could bring the action he should have demanded of the corporation to bring the suit; but the court declined to express any opinion as to how it would hold if all the directors had at the time been the same as those against whom the suit was brought.

The suit here is not against the directors for any malfeasance; it is in part to reach and restrain the corporation itself.   It was said in *Hughson v. Crane*, 115 Cal. 404, that "a demurrer for defect of parties defendant is generally but technical, and, unless the omitted party is indispensable to giving the relief sought, the court should not sustain the demurrer, but should order him brought in, if it shall be made to appear that his presence is proper for a determination of the entire controversy."   And so here the fact that there is a misjoinder or nonjoinder of proper parties is not in itself sufficient ground upon which to sustain the judgment.   Nor do we think the ground of demurrer well taken that the plaintiffs fail to show a joint interest.   The point as to nonjoinder is based on the averment that all the bond holders are not made parties defendant.   They are not necessary parties.   It may be that a complete determination of the controversy cannot be had without them—i. e., no decree would bind them unless brought in— but this would not justify the court in denying relief as to those made parties.   It has been held that in an action brought by a corporation whose stock has been overissued, to test the validity of the claims of holders of such stock, it is desirable, but not absolutely necessary, that all holders of spurious stock should be joined.   (*New York etc. R. R. Co. v. Schuyler*, 38 Barb. 534.)   For a statement of the distinction between necessary and proper parties, see section 329 of Pomeroy's Code Remedies.

In disposing of the demurrers we desire to state that it is not our purpose to express any opinion as to the merits of the controversy should the cause come to a trial. We hold only that the demurrers were not well taken, and that the merits should be disposed of after answer and full hearing at a trial.

The judgment should be reversed and the cause remanded.

Gray, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed and the cause remanded.

Henshaw, J., McFarland, J., Temple, J.