**CITY OF TULSA et al. v. THOMAS et al.**

No. 13995—Opinion Filed April 24, 1923.

(Syllabus.)

1. **Injunction — Enforcement of Void Ordinance.**

An injunction properly lies to enjoin the enforcement of a municipal ordinance which is void as unconstitutional and in violation of a valid statute of the state.

2. **Municipal Corporations — Constitutional Law—Arbitrary Power Conferred by Ordinance Upon Commission—Regulation of Jitney Business.**

An ordinance passed by a municipal corporation purporting to regulate the "jitney" business, but which does not prescribe any rule or conditions for the exercise of such regulation to which all similarly situated may conform, and confers a naked arbitrary power upon the mayor and board of commissioners to give or withhold license or to control the routes of travel, and makes all engaged in the business the tenants at will as to their means of livelihood, is void as in violation of sections 4531 to 4533, inclusive, Comp. Stat. 1921,

and the Fourteenth Amendment to the federal Constitution.

3. **Same—Exclusive Franchises—Validity of Ordinance.**

Article 18, sec. 7, of the Oklahoma Constitution prohibits the granting of an exclusive franchise in this state and an ordinance which in practical effect grants such a franchise is void.

4. **Same — Arbitrary Enforcement of Ordinance—Injunction.**

Even though an ordinance be fair on its face and impartial in appearance, yet, if it is administered in an illegal, arbitrary and discriminatory manner, so as to practically make an actual discrimination between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the federal Constitution, and such manner of enforcement is properly enjoined upon application of the parties so discriminated against and so affected.

Error from District Court, Tulsa County; Redmond S. Cole, Judge.

Action by Irvin L. Thomas et al. against the City of Tulsa, a corporation, et al. for injunction. Temporary injunction granted. Defendants appeal. Affirmed.

I. J. Underwood, H. L. S. Halley, and A. F. Moss, for plaintiffs in error.

W. H. McClarin and Poe & Lundy, for defendants in error.

KENNAMER, J. This is an appeal prosecuted to this court from an order and judgment of the district court of Tulsa county, Okla., rendered on the 23rd day of November, 1922, in a cause wherein the plaintiffs in error were defendants and the defendants in error were plaintiffs, which granted to the plaintiffs below a temporary injunction in said action, enjoining and restraining the defendants below from enforcing ordinance No. 2344 of the city of Tulsa, Okla., as against the plaintiffs below, pending the final determination of the cause below on its merits, and further enjoining and restraining the defendants below from interfering with the plaintiffs in operating "jitneys" within the city of Tulsa. For the purpose of convenience the plaintiffs in error here will be called defendants and defendants in error will be called plaintiffs, the same being the relation the respective parties bore to each other in the case below.

The ordinance involved in this case was exceedingly lengthy, and no necessity exists for more than a brief resume of its provisions. It provided for the filing of an

extended application for a license with the city before any jitney could be operated within the city limits; for a detailed schedule of the trips, routes, and time of departure from termini; for the obtaining of a particular type of public liability insurance policy for each vehicle; for the mayor and board of city commissioners to pass upon whether the driver was a suitable person to operate the vehicle, and as to whether or not the vehicle was a safe one, as well as whether or not the route selected was a proper one, all of which powers were unlimited in any particular; for the issuance of a nontransferable license to each vehicle and for the payment of a so-called license fee of $75 for each vehicle per annum.

The ordinance also provided that the route to be traversed by the licensee should be fixed by the mayor and board of commissioners and that they might change the route or discontinue it whenever, in the judgment of the said mayor and board of commissioners, the public health, safety, convenience, or security made it necessary so to do.

Furthermore, the ordinance made it unlawful to operate any such vehicle on any route other than that designated by the mayor or the said board; gave members of the city police and fire department and United States mail carriers frank passage on all licensed vehicles; and provided for the procuring of a driver's license on payment of $5. This latter provision obligated the prospective driver to file an extended application for a license, stating his age and experience, his length of residence in the city, his place of residence, height, weight, color of hair and eyes, finger prints, and giving evidence of good moral character. No provision is made for examination of the driver or as to the truth of the statements in the application, but it does specify that when the application has been filled out "to the satisfaction of the board of commissioners" he shall be entitled to his license.

It is clear that the turning point of this appeal depends upon the validity of the ordinance referred to. It was held in the case of City of Muskogee v. Wilkins, 73 Oklahoma, 175 Pac. 497, that an injunction would properly lie to enjoin the enforcement of a void ordinance of this nature, and it is our conclusion that if the facts and the law establish the invalidity of the ordinance in question, the decision of the

lower court must be affirmed; otherwise, reversed.

Counsel contend that the fact that the lower court made several statements, during the hearing, to the effect that the ordinance, in its opinion, was a valid one, should bind this court on this appeal in its decision. We do not believe that the law, as settled by the great weight of authority in this and other jurisdictions, will permit our acquiescence in such a statement. Plaintiffs' counsel have cited ample authority for the rule which this court feels called upon to follow; which is that, if the order, judgment, decree, or ruling of the lower court is correct upon the whole record, it does not make any difference how erroneous may have been the reason upon which the ruling or order was based. In other words, under our harmless error statute, Compiled Oklahoma Statutes, 1921, sec. 319, if the entire record is properly brought to this court and it justifies the order, the reasons assigned therefor by the trial court are not controlling. Homestead Realty Co. v. Robison, 39 Okla. 591, 136 Pac. 585; United States v. Norris (C. C. A. 8th Cir.) 222 Fed, 14; Seneca v. Doss, 59 Okla. 149, 158 Pac. 575; Leahy v. Indian Territory Illuminating Oil Co., 39 Okla. 312, 135 Pac. 416; Baker v. Citizens' State Bank of Okeene, 74 Oklahoma, 177 Pac. 568; Board of Equalization v. First State Bank, 77 Okla. 291, 188 Pac. 115.

We thus come to the material question to be determined; that is, the validity of the ordinance.

In 1919, the Legislature of this state passed the statute comprising Compiled Oklahoma Statutes, 1921, secs. 4531, 4532, and 4533, which sections are as follows:

"4531. Any person, firm or corporation may use automobiles or auto-busses for the carrying of passengers for hire within any city in this state, subject to reasonable regulation and control by the legislative authority of the city in which said business is conducted.

"4532. No city shall have power to enact ordinances or regulations against the operating of automobiles or auto-busses or jitney lines for the carrying of passengers, by charging an unreasonable occupation tax or by requiring excessive bonds for liability in case of accident. No city or county shall prescribe, enact, or enforce any ordinance or regulation concerning the business of operating such vehicles for hire, which is prohibitive or unreasonable in its character; provided any city may exclude the operation of automobiles, for hire, along streets oc-

cupied and used by street car lines in congested districts, where the operation thereof is unsafe or dangerous for public travel therein.

"4533. Any such person, firm or corporation furnishing such jitney service (sic) or using automobiles or auto-busses for carrying passengers for hire shall be subject to the taxes or license fee for such vehicles as they use as are required by the laws of the state of Oklahoma, and to such reasonable occupation tax by the ordinances of such city and no other."

Counsel have contended persistently that one reason that no injunction should be permitted to issue in this instance is that there exists no vested right to the use of the public streets for the purpose of conducting the business of hauling passengers for hire, and that, therefore, the parties prosecuting the application for the injunction have no right which a court of equity can recognize. In support of this contention, counsel have cited the case of McGuire v. Wilkerson, Chief of Police of Pawhuska, 209 Pac. 445, decided by the Criminal Court of Appeals of this state October 2, 1922. This case, we believe, is inapplicable to the instant proposition. In the first place, it involves an ordinance prohibiting the use of portions of the streets for parking purposes and for use as taxi stands, which right is not to be denied when exercised in the interest of reasonable conservation of public safety. And in the second place, the court did not consider the application of the 1919 statute, which in its terms, we believe, creates an absolute vested right to the use of the public streets of any municipality for the purpose of conducting the business of carrying passengers for hire, subject only to the right to reasonable regulation. Prior to the passage of the 1919 statute, it might be held that, under the weight of decisions cited, no vested right to use the streets for such purposes did exist; but we believe that the passage of that statute was sufficient to change materially the status of the situation. In view of the exercise of the supreme legislative body of this state in giving a statutory right to conduct the jitney business on the public highways, we believe that the municipal legislative bodies are limited to the provisions of that act, and could only be permitted to exercise reasonable regulation and control for the preservation of public safety as authorized by the statute.

From the provisions of the ordinance, as hereinabove presented, we reach the conclusion that the city commission of the city of Tulsa exceeded its authority as granted to it by the Legislature. The case of Yick Wo v. Hopkins, 118 U. S. 356, 30 L. Ed. 220, involving the passage of a city ordinance in the city of San Francisco limiting and regulating the conduct of the laundry business, is singularly pertinent to the case at bar. The court in that case said:

"We are consequently constrained, at the outset, to differ from the Supreme Court of California upon the real meaning of the ordinances in question. That court considered these ordinances as vesting in the board of supervisors a not unusual discretion in granting or withholding their assent to the use of wooden buildings as laundries, to be exercised in reference to the circumstances of each case, with a view to the protection of the public against the dangers of fire. We are not able to concur in that interpretation of the power conferred upon the supervisors. There is nothing in the ordinances which points to such a regulation of the business of keeping and conducting laundries. They seem intended to confer, and actually do confer, not a discretion to be exercised upon a consideration of the circumstances of each case, but a naked and arbitrary power to give or withhold consent, not only as to places, but as to persons. So that, if an applicant for such consent, being in every way a competent and qualified person, and having complied with every reasonable condition demanded by any public interest, should, failing to obtain the requisite consent of the supervisors to the prosecution of his business, apply for redress by the judicial process of mandamus to require the supervisors to consider and act upon his case, it would be a sufficient answer for them to say that the law had conferred upon them authority to withhold their assent, without reason and without responsibility. The power given to them is not confided to their discretion in the legal sense of that term, but is granted to their mere will. It is purely arbitrary, and acknowledges neither guidance nor restraint."

"The Fourteenth Amendment to the Constitution says: 'Nor shall any state deprive any person of life, liberty, or property without due process of law: nor deny to any person within its jurisdiction the equal protection of the laws.'

"When we consider the nature and the theory of our institutions of government, the principles upon which they are supposed to rest, and review the history of their development, we are constrained to conclude that they do not mean to leave room for the play and action of purely personal and arbitrary power. Sovereignty itself is, of course, not subject to law, for it is the author and source of law; but in our sys-

tem, while sovereign powers are delegated to the agencies of government, sovereignty itself remains with the people, by whom and for whom all government exists and acts. And the law is the definition and limitation of power. It is, indeed, quite true that there must always be lodged somewhere, and in some person or body, the authority of final decision; and in many cases of mere administration the responsibility is purely political, no appeal lying except to the ultimate tribunal of the public judgment, exercised either in the pressure of opinion or by means of the suffrage. but the fundamental rights to life, liberty, and the pursuit of happiness, considered as individual possessions, are secured by those maxims of constitutional law which are the monuments showing the victorious progress of the race in securing to men the blessings of civilization under the reign of just and equal laws, so that, in the famous language of the Massachusetts Bill of Rights, the government of the commonwealth 'may be a government of laws and not of men.' For the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself."

The empowering of the board of commissioners to change and discontinue routes, to pass upon the safety of the vehicle and the driver, and upon the propriety of the route selected by the licensee, all without any limitation or direction in the manner in which these powers should be exercised, seems to us to place in the hands of this board far more power than was ever intended by the Legislature or can be justified under the Fourteenth Amendment to the Federal Constitution.

The case of Yick Wo v. Hopkins, supra, in citing from the case of Baltimore v. Radeke, 49 Md. 217, which was one involving the right of the mayor of the city of Baltimore, under an ordinance of that city, to order the removal of steam boilers from the city upon a given notice, said:

"But it commits to the unrestrained will of a single public officer the power to notify every person who now employs a steam engine in the prosecution of any business in the city of Baltimore, to cease to do so, and by providing compulsory fines for every day's disobedience of such notice and order of removal, renders his power over the use of steam in that city practically absolute, so that he may prohibit its use altogether. But if he should not choose to do this, but only to act in particular cases, there is nothing in the ordinance to guide or control his action. It lays down

no rules by which its impartial execution can be secured or partiality and oppression prevented. It is clear that giving and enforcing these notices may, and quite likely will, bring ruin to the business of those against whom they are directed, while others, from whom they are withheld, may be actually benefited by what is thus done to their neighbors; and, when we remember that this action or nonaction may proceed from enmity or prejudice, from partisan zeal or animosity, from favoritism and other improper influences and motives easy of concealment and difficult to be detected and exposed, it becomes unnecessary to suggest or comment upon the injustice capable of being wrought under cover of such a power, for that becomes apparent to every one who gives to the subject a moment's consideration. In fact, an ordinance which clothes a single individual with such power hardly falls within the domain of law, and we are constrained to pronounce it inoperative and void."

There was no provision for the inspection of the drivers of the licensed vehicles nor of the truth of the statements in the voluminous application required of them. There was no provision for the determination of the safety of the vehicles used nor of the propriety of the route to be traversed by them. This latter restriction appears to us to be directly in violation of the provisions of the 1919 statute, and the others seem to fall directly within the doctrines announced in the Yick Wo Case.

From an examination of the record and the evidence of the commissioners for the city of Tulsa, we are thoroughly convinced that the ordinance in question was intended for the purpose of conferring upon the Tulsa Street Railway Company an exclusive franchise to run busses over the territory and routes traversed by the plaintiffs. This was practically admitted by the city officials, and was, in itself, an expression of an intention to violate the Constitution of this state, article 18, sec. 7, which reads:

"No grant, extension, or renewal of any franchise or other use of the streets, alleys, or other public grounds or ways of any municipality, shall divest the state, or any of its subordinate subdivisions, of their control and regulation of such use and enjoyment.

"Nor shall the power to regulate the charges for public services be surrendered; and no exclusive franchise shall ever be granted." (Bunn's Ed., sec. 423.)

When any ordinance is passed with such an intent, it has been the consistent holding of the courts that it will not be upheld when attacked. Yick Wo v. Hopkins, supra; State of Ohio ex rel. v. Cincinnati Gas, Light

&, Coke Co., 18 Ohio St. 262, 300. The latter case involved an ordinance of the city council purporting to fix the price to be charged for gas, under an authority of law giving discretionary power to do so, and was held bad. The reason given was that even an ordinance apparently valid on its face, if passed in bad faith, cannot be upheld. The ordinance in this case not only is not a valid exercise of legislative power, on its face, but was, in addition thereto, passed for the admitted intention of violating the constitutional provisions of the state. There is no doubt in the minds of the court that the right to reasonable inspection of the safety of the vehicles and the competency and character of the drivers thereof is vested in the municipalities of this state, and that a reasonable fee may be charged as a license for the purpose of defraying the expenses of such inspection; but to say that the broad power of passing upon the right of a person to conduct a certain business of a legitimate nature should be left to the whim and fancy of any individual or group of individuals is contrary to every canon and foundation stone of our form of government.

As an example of the danger of this type of broad delegation of discretionary power, the instant case presents an example. A portion of the decision in the Yick Wo Case, supra, is so peculiarly applicable that it will be copied herein in lieu of further discussion:

"In the present cases we are not obliged to reason from the probable to the actual and, pass upon the validity of the ordinances complained of, as tried merely by the opportunities which their terms afford, of unequal and unjust discrimination in their administration. For the cases present the ordinances in actual operation, and the facts shown establish an administration directed so exclusively against a particular class of persons as to warrant and require the conclusion that, whatever may have been the intent of the ordinances as adopted, they are applied by the public authorities charged with their administration, and thus representing the state itself, with a mind so unequal and oppressive as to amount to a practical denial by the state of that equal protection of the laws which is secured to the petitioners, as to all other persons, by the broad and benign provisions of the Fourteenth Amendment to the Constitution of the United States. Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations

between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution."

Therefore, for the reasons stated, the order of the district court of Tulsa county is affirmed.

JOHNSON, C. J., and NICHOLSON, COCHRAN, and BRANSON, JJ., concur. McNEILL, V. C. J., and HARRISON, J., dissent.