State *ex rel.* Reardon, *Co. Atty.*, v. Scales, *Mayor, et al.*

No. 300.   Opinion Filed August 10, 1908.

(97 Pac. 584.)

1. MUNICIPAL CORPORATIONS—City Charters—Board of Free-holders — Constitutional Law. Section 3 of article 18 (subdivisions "a" and "b") of the Constitution (Bunn's Ed. sections 413 and 414), is self-executing, and susceptible of execution without additional legislation to put same into force.

2. SAME—Powers of Board—Election of City Officers. A board of freeholders, elected by virtue of said sections, have no authority to adopt an ordinance for the nomination and election of such elective officers as may be provided for in the charter framed, independent of the reserved right of the people to ratify or reject the acts of said board.

3. SAME—Election Ordinance—Ratification. An election ordinance providing for the nomination prior thereto and the election at the same election that the proposed charter is voted on of such elective officers as may be created in said charter, will not be in force until such ordinance has been ratified by the qualified electors of such city.

(Syllabus by the Court.)

Application by the state, on the relation of Edward E. Reardon, for writ of mandamus to Henry M. Scales, mayor of the city of Oklahoma City, and others. Writ denied.

This action was instituted on the 21st day of July, A. D. 1908, on the part of the state of Oklahoma, on the relation of Edward E. Reardon, county attorney of Oklahoma county, of said state, by a proper petition, wherein it was alleged that at all times therein mentioned the city of Oklahoma City was a city of the first class, located and situated in the county of Oklahoma, in said state, containing a population in excess of 2,000 inhabitants, and divided into five wards; that under and by virtue of the terms of article 18 of the Constitution of said state said city, at its general election held therein on the 7th day of April, A. D. 1908, caused a board of freeholders, composed of two freeholders from each ward, to be elected by the qualified electors of said city, the freeholders so elected being George K. Williams, John T. Brough, Clifton J. Pratt, James M. McCornack, John H. Wright, John H. Myers, Ulysses S. Grant, A. H. Foulk, Oliver C. Black, and Warren K. Snyder; that said board of freeholders regularly organized, and elected the said Warren K. Snyder as chairman of said board, and the said Oliver C. Black as secretary thereof, and within 90 days after said election prepared and proposed a charter for said city, and the same was signed in duplicate by the members thereof, one duplicate original of said charter so signed being returned on the 3d day of July, A. D. 1908, to the chief executive officer of said city, to wit, Henry M. Scales, and the other duplicate original thereof at the same time was returned and filed with the register of deeds of said county.

It is further alleged that at the same time the said board of freeholders adopted an election ordinance, which was duly certified to by said board, and filed with the chief executive officer of said city at the same time the said duplicate original charter was returned and filed with him. A copy of said proposed charter is attached to said petition as a part thereof, and designated as

"Exhibit A." Said proposed charter and election ordinance were published in the Oklahoma City Weekly Times, a weekly newspaper of general circulation within said city, beginning with the 17th day of July, A. D. 1908, and it is alleged that the same will continue to be published in said newspaper for three consecutive issues, including the 17th day of July, A. D. 1908, the 24th day of July, A. D. 1908, and the 31st day of July, A. D. 1908, said first publication having been made within 20 days after the completion of said charter, which is framed and proposed for the government of said city; and it is alleged therein that it is consistent with and subject to the Constitution and laws of the state of Oklahoma. It is further alleged that at the election of the 7th day of April, A. D. 1908, when said board of freeholders was elected, a vote was taken upon the question as to whether or not further proceedings toward framing and proposing a charter should be had pursuant to the call for such election, and a majority of the qualified electors voting thereon voted to proceed further in the matter of framing and proposing a charter for said city, as provided for by article 18 of the Constitution of the state of Oklahoma; that in said proposed charter and said election ordinance it is provided, among other things, for the submission of said charter to the qualified electors of said city at a special election to be held on the 2d day of September, A. D. 1908, and provides, further, for the following elective officers, to wit: A board of council, consisting of five members, one of whom shall be a resident of each ward, said members to be elected and a term of two years and until their successors are elected and qualified; and also a mayor, to be named and styled "the mayor of the city of Oklahoma City," and, further, a board of five trustees, to be known as "the board of education" of said city, one member to be resident of each of said wards, and each member to hold office for a term of two years and until his successor is elected and qualified. All other officers of said city under said proposed charter shall be appointed. Said election ordinance provided, among other things, that on Tuesday, the 4th day of

August, A. D. 1908, there should be held in said city a special primary election for the purpose of nominating candidates for the elective offices under said charter, it being provided in said charter that the same should be voted on September 2, 1908; said primary election to be held in accordance with the regular primary election laws of the state, except that nominating petitions should be filed with the city clerk not later than Saturday, July 25, A. D. 1908. It was further provided in said ordinance that the mayor and city council should appoint all necessary election officers for said primary election, provide suitable places for holding the same in the various election precincts, and furnish all necessary supplies. It is further provided in said charter, and also in said ordinance, that at the same time the election is held for submitting said charter for adoption or rejection by the qualified electors of said city there should be held, by the same election officers, an election at which should be voted for the various elective officers provided for in said charter, to wit, a board of council, consisting of five members, a board of education, consisting of five members, and a mayor of said city.

Petitioner further avers that certain persons, who are candidates for various elective offices created or provided for by said charter, have filed with the defendant George Hess, city clerk of said city, nominating petitions as candidates to be voted for at said primary election to be held on the 4th day of August, A. D. 1908, for the Democratic party and for the Republican party for such elective offices. Petitioner further alleges that the defendant Henry M. Scales, mayor as aforesaid, and the other defendants, to wit, S. A. Beyers, L. L. Land, Mont F. Highley, R. F. Helm, W. T. Corder, A. W. McWilliams, C. E. McDavie, Mike Peshek, J. W. Johnson, and O. P. Workman, and the said defendant George Hess, city clerk of said city, have failed and neglected to appoint the necessary election officers to hold said primary election, or to provide suitable places for holding same in the various election precincts, and to provide the necessary election supplies for holding said primary election, and that it is

the declared purpose and intention of said defendants to fail and refuse to do any of the acts required of them by said proposed charter and election ordinance for the purpose of holding said primary election on the 4th day of August, A. D. 1908. Petitioner avers that it has no other adequate remedy at law, and asks for the issuance of a peremptory writ of mandamus commanding and requiring said defendants, and each of them, to do and perform all the duties, acts, and things required to be done and performed by them, or any of them, by the said proposed charter, or the said election ordinance, or the laws of the state of Oklahoma, concerning the holding of such primary election contemplated by said election ordinance on the 4th day of August, A. D. 1908, and the said special election on the 2d day of September, A. D. 1908.

On the 21st day of July, A. D. 1908, the date on which the petition was filed with the clerk of this court, application was made by the relator herein for the issuance of an alternative writ of mandamus, returnable *instanter*. The defendants, appearing through their attorneys, objected to the issuance thereof.

*Wm. L. McCann, John H. Myers, W. K. Snyder,* and *Edward E. Reardon,* for plaintiff.

*W. R. Taylor* and *C. B. Ames,* for defendants.

WILLIAMS, C. J. (after stating the facts as above). 1. The first question to be determined is whether or not section 3 of article 18 of the Constitution (Bunn's Ed. §§ 413 and 414) is self-executing, or susceptible of execution without additional legislation to put it in force. The states of California, Colorado, Minnesota, Missouri, Oregon and Washington have similar provisions. Const. Cal. 1879, art. 11, § 8; Const. Colo. (as amended 1901) art. 20; Const. Mo. 1875, art. 9, § 16 (Ann. St. 1906, p. 265); Const. Minn. (as amended 1898) art. 4, § 36; Const. Or. (as amended 1906) art. 11, § 2; Const. Wash. 1889, art. 11, § 10.

Section 8, art. 11, Const. Cal. 1879, is as follows:

"Any city containing a population of more than three thousand five hundred inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this state, by causing a board of fifteen freeholders, who shall have been for at least five years qualified electors thereof, to be elected by the qualified voters of said city, at any general or special election, whose duty it shall be, within ninety days after such election, to prepare and propose a charter for such city, which shall be signed in duplicate by the members of such board, or a majority of them, and returned, one copy to the mayor thereof, or other chief executive officer of such city, and the other to the recorder of the county. Such proposed charter shall then be published in two daily newspapers of general circulation in such city for at least twenty days after the completion of the charter; provided, that in cities containing a population of not more than ten thousand inhabitants such proposed charter shall be published in one such daily newspaper; and within not less than thirty days after such publication it shall be submitted to the qualified electors of said city at a general or special election and if a majority of such qualified electors voting thereat shall ratify the same it shall thereafter be submitted to the Legislature for its approval or rejection as a whole, without power of alteration or amendment. Such approval may be made by concurrent resolution, and if approved by a majority vote of the members elected to each house it shall become the charter of such city, or if such city be consolidated with a county, then of such city and county, and shall become the organic law thereof, and supersede any existing charter, and all amendments thereof and all laws inconsistent with such charter. A copy of such charter, certified by the mayor or chief executive officer, and authenticated by the seal of such city, setting forth the submission of such charter to the electors, and its ratification by them, shall, after the approval of such charter by the Legislature, be made in duplicate, and deposited, one in the office of the Secretary of State, and the other, after being recorded in said recorder's office, shall be deposited in the archives of the city; and thereafter all courts shall take judicial notice of said charter. The charter so ratified may be amended, at intervals of not less than two years, by proposals therefor, submitted by the legislative authority of the city to the qualified electors thereof, at a general or special election, held at least forty

days after the publication of such proposals for twenty days in a daily newspaper of general circulation in such city, and ratified by at least three-fifths of the qualified electors voting thereat and approved by the Legislature as herein provided for the approval of the charter.  In submitting any such charter or amendments thereto, any alternative article or proposition may be presented for the choice of the voters, and may be voted on separately without prejudice to others."

In the case of *People v. Hoge,* 55 Cal: 618, Mr. Chief Justice Morrison, speaking for the court, said:

"Legislative action was not necessary to enable the inhabitants of the city and county of San Francisco to act, under section 8, art. 11, of the Constitution, in the matter of framing a charter.  The Constitution nowhere provides either expressly or by implication for such legislative interference.  *   *   *"

Section 10, art. 11, Const. Wash. 1889, provides as follows:

" *   *   *  Any city containing a population of twenty thousand inhabitants, or more, shall be permitted to frame a charter for its own government, consistent with and subject to the Constitution and laws of this state, and for such purpose the legislative authority of such city may cause an election to be had, at which election there shall be chosen by the qualified electors of said city fifteen freeholders thereof, who shall have been residents of said city for a period of at least two years preceding their election and qualified electors, whose duty it shall be to convene within ten days after their election and prepare and propose a charter for such city.  Such proposed charter shall be submitted to the qualified electors of said city, and if a majority of such qualified electors voting thereon ratify the same, it shall become the charter of said city, and shall become the organic law thereof, and supersede any existing charter, including amendments thereto, and all special laws inconsistent with such charter.  Said proposed charter shall be published in two daily newspapers published in said city, for at least thirty days prior to the day of submitting the same to the electors for their approval, as above provided.  All elections in this section authorized shall only be had upon notice, which notice shall specify the object of calling such elections, and shall be given for at least ten days before the day of election, in all election districts of said city.  Said elections may

be general or special elections, and, except as herein provided, shall be governed by the laws regulating and controlling general or special elections in said city. Such charter may be amended by proposals therefor submitted by the legislative authority of such city to the electors thereof at any general election after notice of such submission, published as above specified, and ratified by a majority of the qualified electors voting thereon. In submitting said charter, or amendment thereto, any alternative article or proposition may be presented for the choice of the voters, and may be voted on separately without prejudice to others."

In the case of *Reeves v. Anderson et al.,* 13 Wash. 17, 42 Pac. 627, Mr. Justice Gordon, for the court, in discussing said section, says:

"A constitutional provision is said to be [not] self-executing 'when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law.' Cooley, Const. Lim. p. 121. 'Perhaps even in such cases (where the power is self-executing) legislation may be desirable, by way of providing remedies for the protection of the rights secured, or of regulating the claim of the right so that its exact limits may be known and understood.' Id. 122. In our opinion, it was competent for the Legislature to supplement the constitutional provision by pointing out the manner in which the right conferred by the Constitution might be exercised, and by prescribing rules for the guidance of the city council in relation thereto."

In Missouri the courts have assumed that said provision was self-executing; for the power seems to have been exercised without the fact of its being self-acting ever being questioned. The Minnesota provision is not self-executing, as it provides that "before any city shall incorporate" under that provision the Legislature "shall prescribe by law the general limits within which such charter shall be framed." The Colorado and Oregon provisions appear not to have been construed in that respect by the court of last resort in said states.

A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be en-

forced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law. Cooley's Constitutional Limitation (7th Ed.) p. 121. But is it to be successfully contended that, because this constitutional provision does not specify the qualifications of electors of such city, the same is not self-executing? If that rule of construction is to be adopted, constitutional provisions could not be made self-acting without incorporating therein a miscellaneous code of laws for such purposes. In the case of the *State of Oklahoma ex rel. Edwards v. John E. Millar et al.,* recently decided by this court, *ante*, p. 448, 96 Pac. 747, Mr. Justice Kane, speaking for the court, in construing section 27 of article 10 of the Constitution of this state, held that the same was self-executing.

It is further insisted that the section herein involved is not self-executing, because it does not prescribe by whom the proposed charter shall be submitted to the qualified electors of such city, and who shall fix the date on which such election shall be held. In this case the freeholders were elected at a general election, called for this specific purpose by the legislative authority of such city, concurred in by its chief executive officer, and at the same election a majority of the qualified electors voting thereat voted to proceed to adopt a charter, and likewise, in the same manner, the date on which the election should be held for the ratification or rejection of said charter shall be fixed by the same legislative authority, and shall be submitted by such municipality to the qualified electors of said city at a general or special election for ratification or rejection. The election for such purpose shall be called by the same municipal authorities in the same manner as for the election of freeholders and for voting to frame a charter, at such time as may comply with the limitations or requirements of said provision in that respect. If there is a general election within such period, such municipal authorities can properly, and should, submit it for ratification or rejection at such election.

Under the rule laid down by this court in the case of *Ex*

*parte Wagner, ante,* p. 33, 95 Pac. 435, wherein mandatory provision was made for the Legislature to carry such provisions into effect (Const. [Bunn's Ed.] §§ 55, 131), and approved in the case of *State ex rel. Edwards v. Millar et al., supra,* supported and amplified by Cooley's Constitutional Limitations, *supra,* we necessarily conclude that section 3, comprising subdivisions "a" and "b." of article 18 (Bunn's Ed. §§ 413 and 414) of the Constitution of this state, is self-executing, or, in other words, is effective without any further legislation to that, end.

2.    The next question for determination is whether or not the election ordinance adopted by the board of freeholders, which was duly certified to and returned and filed by said board with the chief executive officer of said city with the duplicate original charter, is effective without having been ratified by the qualified electors of said city. Municipalities have no inherent jurisdiction to make laws or adopt regulations of government. They are governments of enumerated powers, acting by a delegated authority; so that, while the Legislature may exercise such powers of government coming within a proper designation of legislative power as are not expressly or impliedly prohibited, the local authorities can exercise those only which are expressly or impliedly conferred, and subject to such regulations or restrictions as are annexed to the grant. Cooley's Constitutional Limitations (7th Ed.) 265. All the power that a municipality has, or the citizens of a municipality may exercise, in framing a charter or an organic law for such city, is such as may be delegated to it by the Constitution of the state, or such authority pertaining to local government as may be conferred by the Legislature. The sovereign power rests in the people of the state in the aggregate, and not in any subdivision thereof. The constitutional convention that framed the organic law for the commonwealth was the fountain of political power, having derived the same from all the people of the state, and not from any particular subdivision or municipality thereof. From this fountain of political power flowed the Constitution, in which was delegated to municipalities, in the section under construction,

certain authority, and such authority must be strictly construed. It is only the principal or sovereign, which is the state, that is presumed to have inherent power or authority.] *Benner et al. v. Porter,* 9 How, 241, 13 L. Ed. 122; *State ex rel. Ryan v. District Court,* 87 Minn. 146, 91 N. W. 301; *State v. Field,* 99 Mo. 352, 12 S. W. 802; *Kansas City v. Marsh Oil Co.,* 140 Mo. 458, 41 S. W. 943; *City of St. Louis v. Western Union Tel. Co.,* 149 U. S. 465, 13 Sup. Ct. 990, 37 L. Ed. 810; *In re Cloherty,* 2 Wash. St. 137, 27 Pac. 1064; *Tacoma Gas & E. L. Co. v. City of Tacoma,* 14 Wash. 288, 44 Pac. 655.

In the case of *People v. Gunn,* 85 Cal. 238, 24 Pac. 719, Mr. Justice Fox, speaking for the court, said:

"In this case the procedure was under constituional provisions expressly declared to be mandatory and prohibitory. Under such provisions the mode is the measure of power. The acts required by the Constitution to be performed are conditions precedent, and necessary to the validity of the legislation which it authorizes, whether that legislation be by the people of a municipality, under article 11, or by the Senate and Assembly, under article 4. The city of Riverside attempted to incorporate under the general statute on that subject. With reference to it this court held that 'the right to enjoy and exercise the franchsie of a municipal corporation depends on a compliance with the provisions of the statute which authorizes the organization of such corporation.' *People v. Riverside,* 66 Cal. 291, 5 Pac. 350. And this in discussing alleged omissions similar to, and not more important than, those alleged to have taken place in the present case. If this strict compliance is required with reference to the provisions of a statute passed by the Legislature, around which are thrown none but the ordinary safeguards of construction, which, in fact, are to be construed liberally for the accomplishment of the object and the promotion of justice, how much more strict should be the compliance with the requirements of a Constitution, which on its face declares that all of its provisions are mandatory and prohibitory, unless otherwise expressly provided? We are not at liberty to say that any constitutional prerequisite to the validity of a law is of no practical service, or to consider the policy of a provision, when its language seems plain and positive. *Weill v. Kenfield,* 54

Cal. 117. ·The language of Judge Cooley in his work on Constitutional Limitations (page 78), quoted and adopted in *State v. Rogers,* 10 Nev. 253, 21 Am. Rep. 738, is directly in point, and shows that, even in the absence of a clause making its provisions ·mandatory and prohibitory, the courts will not hold the provisions of a Constitution to be directory or unessential, but will rather hold that wherever it prescribes a mode, that mode is the measure of power." (See, also, *Page v. Board of Supervisors,* 85 Cal. 50. 24 Pac. 607.)

As to whether or not a constitutional convention has inherent power to adopt an ordinance without having .been specially authorized thereto by the enabling act passed by Congress for the admission of the state into the Union, or by an act of the Legislature for the framing of· or the revision of the Constitution of such state, there may be some controversy. *Ex parte Birmingham & A. R. Co.,* 145 Ala. 519, 42 South. 120; *McDaniel's Case,* 2 Hill (S. C.) 270; Opinion of Justices, 6 Cush. (Mass.) 574; *Bragg v. Tuffts,* 49 Ark. 560, 6 S. W. 160; *Wells v. Bain,* 75 Pa. 39, 15 Am. Rep. 563; *Goodrich v. Moore,* 2 Minn. 61 (Gil. 49), 72 Am. Dec. 74; *Sproule v. Fredericks,* 69 Miss. 898, 11 South. 472; *Loomis v. Jackson,* 6 W. Va. 613; *Plowman v. Thornton,* 52 Ala. 559; *Quinlan v. H. & T. C. Ry. Co.,* 89 Tex. 356, 34 S. W. 738; *Woods' Appeal,* 75 Pa. 59; *Ex parte Hall,* 47 Ala. 675; *State v. Neal,* 42 Mo. 119; *Stewart v. Crosby,* 15 Tex. 546; *Grisby v. Peak,* 57 Tex. 142; *Washington's Case,* 69 Ala. 281; *Jones' Case,* 95 Ala. 443, 11 South. 11, 18 L. R. A. 95; *Frantz v. Autry,* 18 Okla. 561, 91 Pac. 194; Cooley's Const. Lim. (7th Ed.) p. 61; 6 Am. & Eng. Ency. Law (2d Ed.) pp. 896-898; 8 Cyc. p. 723, note.

However, if there was absolute harmony in the authorities to the effect that a convention assembled for the purpose of framing a Constitution for a state has the inherent and unquestioned right to adopt ordinances that it might deem proper, still such authority would not be applicable to this case, because, as before stated, a constitutional convention represents sovereignty. It is the fountain of supreme power flowing from a sovereign people; but a

board of freeholders, elected by the qualified electors of a municipal subdivision of the state, coming into being by virtue of delegated power, have no inherent authority, but only such as is clearly expressed in the delegation of the power.

It necessarily follows that the relators are not entitled to the relief prayed for.

Writ denied.

All the Justices concur.