THURSTON, *County Treasurer,* v. CALDWELL *et al.*

No. 5067.    Opinion Filed December 16, 1913.

(137 Pac. 683.)

1.    **TAXATION—Imposition of Taxes—Power of State—Municipalities.** Section 20, art. 10, Williams' Ann. Const. Okla., which provides, ''The Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes,'' applies to purely municipal affairs, and does not constitute a limitation upon the power of the Legislature of the state to impose taxes for purposes which, although of a municipal character, the state has a sovereign interest in, such as taxation for police protection, for streets, highways, and bridges, for the purpose of establishing and maintaining a public school system, etc.

2.    **SAME—Enforcement—Right to Enjoin—Conditions Precedent.** In all matters pertaining to taxation, a party who seeks equitable relief against an assessment of which he complains must himself offer to do equity. He must offer to pay the amount of taxes as the facts show would be properly chargeable against him under a proper assessment.

(Syllabus by the Court.)

*Error from District Court, McClain County;*
*R. McMillan, Judge.*

Action by W. E. Caldwell and others against J. B. Thurston, County Treasurer of McClain County. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

*Chas. West,* Atty. Gen., *C. J. Davenport,* Asst. Atty. Gen., *Wayne Wadlington,* Co. Atty., and *Warren K. Snyder,* for plaintiff in error.

*J. W. Hocker,* for defendants in error.

KANE, J. This was a suit in equity, commenced by the defendants in error, plaintiffs below, against the plaintiff in error, defendant below, to enjoin the defendant as county treasurer from selling certain real estate belonging to the plaintiffs to satisfy certain assessments and taxes imposed or attempted to be im-

posed on said read estate for what is alleged to be city, town, school district, and county purposes, under the general revenue law of the state. Upon trial to the court, a decree was issued as prayed for, to reverse which this proceeding in error was commenced. The taxes involved cover the years 1908, 1909, 1910, 1911, and 1912. The petition shows that during part of that time the city of Purcell was a chartered city under a commission form of government, with duly organized legislative and executive departments. The principal contention of the plaintiffs is that the general revenue law of 1909 (Sess. Laws 1909, c. 38, secs. 14, 15), which empowered the county clerk to make the tax roll for county, city, town, township, and school district purposes and certify the same to the county treasurer, together with his warrant directing the county treasurer to collect the taxes for the city, as well as for the county, township, and school district, and the act of 1910 (Sess. Laws 1910, c. 64, secs. 3, 4), known as the "County Excise Board Act," which directs and empowers a board composed of certain executive and judicial officers of the county to levy taxes for city, as well as for county, purposes, and the act of 1911 (Sess. Laws 1910-11, c. 152), creating the office of county assessor and abolishing township assessors, are unconstitutional in so far as they relate to counties, cities, and townships, because they are repugnant to section 20 of article 10, Williams' Ann. Const. Okla., which provides:

"The Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes."

We gather from the able brief of counsel for plaintiffs that broadly his contention is that in the matter of the imposition, assessment, and collection of taxes upon property for the purpose of any county, city, township, or other municipal corporation, each governmental subdivision is supreme, and the Legislature of the state is without power to impose any taxes thereon for such purposes, even though the tax sought to be imposed may be as necessary to the health, happiness, and welfare of the state at large as to the people of the particular municipal corporation involved. We cannot agree with this sweeping interpre-

tation of the constitutional provision under consideration. Several state Constitutions contain similar provisions which had been construed by their highest courts prior to the adoption of our Constitution, but we are unable to find where the construction contended for by counsel for plaintiffs had been adopted by any of them.

In the note to this section in Williams' Ann. Const., it is said: "This section was taken from Kentucky." Whilst no decision by the highest court of that state passing directly upon the exact question herein involved is to be found, there are several cases to the effect that this provision does not deprive the Legislature of the power to provide for the assessment of property which shall be the basis of all levies for city, town, township, and other subdivisions of the state. *South Covington, etc., Ry. Co. v. Town of Bellevue,* 105 Ky. 283, 49 S. W. 23, 57 L. R. A. 50; *Paducah St. Ry. Co. v. McCracken County,* 105 Ky. 472, 49 S. W. 178; *Levi v. City of Louisville,* 97 Ky. 394, 30 S. W. 973, 28 L. R. A. 480; *State ex rel. City of Seattle v. Carson,* 6 Wash. 250, 33 Pac. 428. The latter, a Washington case, which state also has a. similar provision, is more directly in point. It was held:

"Const. art. 7, sec. 9, and article 11, sec. 12, providing that for all corporate purposes municipal corporations may be vested with authority to assess and collect taxes, and that the Legislature shall have no power to impose taxes on municipal corporations for municipal purposes, do not render invalid Act March 9, 1893, making the assessment roll of a city of the first class the same as that of the county,. and making the county treasurer *ex officio* collector of taxes for the city."

The Supreme Court of Missouri, where there is a provision identical with our own, in *State ex rel. v. Owsley,* 122 Mo. 68, 26 S. W. 659, speaking generally of its purpose and effect, and construing it in connection with other provisions of the Missouri Constitution, which in effect are also found in our Constitution, says:

"The crying evil that the people of the state were laboring under at the time these provisions were introduced into the Constitution was excessive indebtedness, incurred by counties and other municipalities under authority of the Legislature, to meet

which oppressive taxes 'had to be imposed, and it was to meet this evil, and remove it for the future, that these provisions were introduced into the organic law of the state. It was not sought to deprive the Legislature of the taxing power and confer it upon municipalities to any extent. On the contrary, the plenary taxing power of the General Assembly as it had theretofore been exercised is recognized as a premise of the proposed legislation. It is only the exercise of it by the assembly that is limited and regulated by the Constitution. All taxes since the adoption of the Constitution or before are levied and collected under and by the authority of the General Assembly of the state. Under these limitations of the Constitution, the taxes must be uniform within the territorial limits of the authority levying them, they must be levied in pursuance of a general law of the assembly directly authorizing them for state purposes, and authorizing them indirectly, through power conferred upon municipal authorities, for local purposes. And in each case the rate of taxation must be within the limit allowed for such purpose. And the General Assembly was inhibited from imposing upon municipalities a tax for local purposes, except by a general law authorizing such tax to be imposed by the local authorities, or releasing any municipality from its proportionate share of taxes levied for state purposes."

In the Owsley case, it was contended that a section of the act of the General Assembly which provided for the registration of voters in, and for the appointment by the Governor of, a recorder of voters in cities of more than 100,000 inhabitants, and which further provided that all the costs and expenses of such registration and election and of the office of recorder of voters, required by this article in any such cities, shall be paid one-half out of the city treasury and one-half out of the county treasury, was unconstitutional, as being repugnant to the section of the Missouri Constitution. It was held:

"Revised Statutes 1889, secs. 989-1013 (revising and amending the Act of March 31, 1883, Laws, p. 38), providing for the registration of voters in cities having a population of more than 100,000, and the appointment by the Governor of a recorder of voters for such cities, and the payment of the costs and expenses of registration and election and of the office of recorder of voters equally out of the county and city treasuries, in cities situated within counties, are not unconstitutional as authorizing the levy of a municipal local tax for other than local purposes."

In *State ex rel. Hawes et al. v. Mason*, 153 Mo. 23, 54 S. W. 524, the authority of the state to create a metropolitan police force and to compel the city of St. Louis to maintain the same was questioned upon the ground that it imposed a tax upon the municipality contrary to the same section of the Missouri Constitution construed in the Owsley case. Mr. Chief Justice Gantt said:

"Still another constitutional objection is raised to this act. It is charged that it violates section 10 of article 10 of the Constitution of Missouri, which · prohibits the General Assembly from imposing 'taxes upon counties, cities, towns, or other municipal corporations or upon the inhabitants or property thereof, for county, city, town or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes.' In view of the discussion already had in the first paragraph ·of this opinion, in which we hold that the preservation of the peace and protection of life and property is a state and not a municipal function, it would seem obvious that this provision of the Constitution has no application to the fund required to support the police department. The inhibition does not extend to a state tax, but to municipal taxes, and this is distinctly a state tax, for a strictly state purpose."

In *State ex rel. v. Field*, 119 Mo. 614, 24 S. W. 757, the same court, sitting *in banc*, said:

"We deem it within the power of the Legislature to impose a tax upon a particular subdivision or municipality of the state, when, in its judgment, it is for the benefit of that locality as well as the state at large."

In support of this proposition, *State ex rel. v. Owsley, supra*, and *State ex rel. v. Board of Education of St. Louis*, 141 Mo. 45, 41 S. W. 924, are cited. We think the Missouri rule is sound and correctly construes the constitutional provision involved.

It has been held by this court that municipalities have no inherent jurisdiction to make laws or adopt regulations ot government. All the power that a municipality has, or the citizens of a municipality may exercise, in framing a charter, or an organic law for such city, is such as may be delegated to it by the Constitution of the state, or such authority pertaining to local

government as may be conferred by the Legislature. *State ex rel. Reardon v. Scales,* 21 Okla. 683, 97 Pac. 584. In *Lackey et al. v. State ex rel. Grant et al.,* 29 Okla. 255, 116 Pac. 913, this court, speaking generally of the power of cities under a charter form of government, followed the Missouri rule. Mr. Justice Hayes, who delivered the opinion for the court, quotes approvingly from Dillon on Municipal Corporations, vol. 1, sec. 63 (5th Ed.), as follows:

"Provisions of the freeholders' charter which are purely municipal in their character supersede provisions of the general laws which are inconsistent therewith. * * * Their charters do not prevent legislation upon matters not municipal in their character, but affecting the state at large, although such legislation necessarily applies to cities that have framed their own charters, and overrides express provisions contained therein. The words of the Missouri Constitution declaring that a city of prescribed population 'may frame a charter for its own government' do not confer on the city the right, in framing its charter, to assume all the powers that the state may exercise within the city limits, but only powers incident to its municipality. These words mean that the city may frame a charter for the government of itself as a city, including all that is necessary or incident to the government of the municipality, but not all the power that the state has for the protection of the rights and the regulation of the duties of the inhabitants in the city, as between themselves. But the Legislature may, if it should see fit, confer on a city having a freeholders' charter power not necessary or incident to the city government. There are governmental powers, the just exercise of which is essential to happiness and wellbeing of the people of a particular city, yet which are not of a character essentially appertaining to the city government. Such powers the state may reserve to be exercised by itself, or it may delegate them to the city; but, until so delegated, they are reserved."

In that case it was held that the matter of providing municipal officers for the city government was purely a municipal affair and that the charter provision in relation to that subject, which was repugnant to the general law, prevailed. Other cases that tend to throw some light on the question under discussion and illustrate the distinction between a purely municipal affair and an affair of a municipal character, in which the state has a

sovereign interest, are: *Board of Education of City of Ardmore v. State ex rel. Best,* 26 Okla. 366, 109 Pac. 563; *Coleman v. Frame,* 26 Okla. 193, 109 Pac. 928, 31 L. R. A. (N. S.) 556; *Dingman v. City of Sapulpa,* 27 Okla. 116, 111 Pac. 319; *City of Ardmore v. State,* 24 Okla. 862, 104 Pac. 913; and *State v. Barnes,* 22 Okla. 191, 97 Pac. 997.

Counsel for plaintiff in his brief and argument does not distinguish between the power of the Legislature to impose taxes for purely municipal purposes, and for purposes which, whilst they are beneficial to the particular municipality, in which, nevertheless, the state has a sovereign interest. From the record we have before us, it is apparent that a large proportion of the taxes enjoined belong to the latter class. No doubt that at least a portion of it was imposed for the maintenance of the public schools. In *Board of Education of City of Ardmore et al. v. State ex rel. Best, supra,* this court said:

"The organization and maintenance of a free public school system for the education of the children of cities containing a population of 2,000 or over ought to be a matter of as much general state concern as the education of the balance of the children of the state, and ordinarily this function of government is not delegated to such municipalities. 'In modern days it is not only considered a governmental function, but, also, and especially in the United States, an imperative governmental duty to provide for and maintain a system of public education. This is true not only because through education is the individual rendered better capable of rational and good government, but also because education adds to his economic efficiency.' 3 Abbott on Municipal Corporations, 2379."

And the court concludes that, from a casual examination of the provisions of the Constitution pertaining to public schools, it is apparent "that it was not the intention of the framers of the Constitution to intrust this important function of government to a minor political subdivision of the state."

Judge Cooley expresses himself on this subject as follows:

'Whenever a system of public instruction is established by law, to be administered by local boards, who levy taxes, build schoolhouses, and employ teachers for the purpose, it can hardly be questioned that the state, in establishing the system, reserved

to itself the means of giving it complete effect and full efficiency in every township and district of the state, even though a majority of the people of such township or district, deficient in proper appreciation of its advantages, should refuse to take upon themselves the expense necessary to give them a participation in its benefits. Possibly judicial proceedings might be available in some such cases, where a state law for the levy of local taxes for educational purposes had been disobeyed; but the Legislature would be at liberty to choose its own method for compelling the performance of the local duty." (Cooley on Taxation, p. 1299.)

*Wilkinson v. Lord, Treas. of Richardson County*, 85 Neb. 136, 122 N. W. 699, 24 L. R. A. (N. S.) 1104, also is instructive on this phase of the case, and is authority for the proposition that the section of the Nebraska Constitution containing the provision that "all municipal corporations may be vested with authority to assess and collect taxes, is not a limitation upon the power of the Legislature." The taxes enjoined, no doubt, were imposed for purposes in which the state at large was as much interested as any of its minor subdivisions. It was never intended, by the constitutional limitations above referred to, that the Legislature should be prohibited from imposing taxes for such purposes. It is true that some courts and text-writers have taken the view that the local institutions of self-government, regardless of express constitutional limitations, are so integral a part of American institutions that they are to an extent independent of legislative control. But even those who press this view most extremely acknowledge the absolute supremacy of the Legislature in many matters of chiefly local interest in which, nevertheless, the state has a sovereign interest, among which may be mentioned state control over local police protection; state control over local taxation for streets, highways, and bridges; state control over local taxation for schools; state control over local taxation for the public health. This subject is instructively treated by Mr. Gray, in chapter 7 of his work on "Limitations of Taxing Power and Public Indebtedness," where the authorities will be found collected in the notes.

As the petition in the case at bar does not specifically show that the taxes involved herein were imposed for purely munici-

pal purposes, as herein defined, or that the plaintiffs tendered the amount due for such taxes as were legally imposed, it does not state facts sufficient to constitute a cause of action, and the demurrer to it filed in the court below should have been sustained. In all matters pertaining to taxation, a party who seeks equitable relief against an assessment of which he complains must, himself, offer to do equity. He must offer to pay the amount of taxes which the facts show would be properly chargeable against him under a proper assessment. *Kellogg v. Ely,* 15 Ohio St. 64; *Wiggin v. Mayor, etc., of New York,* 9 Paige (N. Y.) 16; *City of Burlington v. Gilbert,* 31 Iowa, 356, 7 Am. Rep. 143.

The judgment of the court below is therefore reversed, and the cause remanded, with directions to proceed in accordance with this opinion.

All the Justices concur.