### Y & Y CAB SERVICE, Inc., et al. v. OKLAHOMA CITY et al.

No. 24880.     Oct. 17, 1933.

Rehearing Denied Jan. 9, 1934.

Rittenhouse, Webster & Rittenhouse and E. M. Goodson, for plaintiffs in error.

Harlan Deupree, Municipal Counselor, and A. P. Van Meter, Asst. Municipal Counselor (J. B. Dudley and Hayes, Richardson, Shartel, Gilliland & Jordon, of counsel), for defendants in error.

OSBORN, J. This action was filed in the district court of Oklahoma county by the Y & Y Cab Service, Incorporated, a corporation, and J. H. York; Blue Bird Cab Operating Company, Incorporated, a corporation, and O. M. Estes, L. C. Livingston, sole owner and doing a taxicab business under the trade name of Arrow Cab Company, and Wm. Sant, sole owner and doing a taxicab business under the trade name of Your Cab Company, against the city of Oklahoma City, a municipal corporation, C. J. Blinn, mayor, A. L. McRill, city manager of the city of Oklahoma City, and John Watt, chief of police of Oklahoma City, as an action to enjoin defendant city, through its duly constituted officials, from enforcing the terms of a city ordinance of said city known as ordinance No. 4473, which is an ordinance fixing the maximum and minimum rates of fare for the transportation of passengers within the city by automobiles for hire.

A trial was had in the district court which resulted in a judgment denying an injunction, and plaintiffs have lodged this appeal. The parties will be referred to as they appeared in the trial court.

The plaintiffs' petition alleges that the various plaintiff companies operate 87 taxicabs in the city of Oklahoma City; that the various cabs are owned by the individuals

who drive them and who operate them under an agreement with the particular company with which the driver is affiliated; that the company is to have direction and control over the operation of the cab; that the signs and trade-marks of the company are to be painted on the automobile; that the individual operator shall carry insurance on his automobile covering public liability and property damage. Under the said arrangement the companies operate and pay the expense of telephone stations through which the public make calls for taxicab service, and pay the cost of advertising the cab service. A fixed daily fee is charged to each individual operator, and, upon payment of said fee, the operator is allowed to retain all he can make for operating the cab, and is allowed to operate as many hours per day as he sees fit.

It is further alleged that plaintiffs have divided the city into zones for the purpose of computing fares, and are now, and have been for some time in the past, making certain charges for service within certain zones; that in other zones the fare is proportionately increased according to the distance traveled. It is further alleged that the citizens of Oklahoma City are now well acquainted with said form of cab service, and that the business of the plaintiff companies now constitutes from one-half to three-fourths of the entire taxicab business of said city.

The ordinance in question was passed on June 6, 1933, and provides, in substance, that no person, firm, or corporation owning. operating, or controlling any taxicab or automobile for hire shall charge any fare in excess of a certain sum, nor less than a certain sum, thereby fixing a maximum and minimum charge for service under certain conditions therein stated. The ordinance further provides that all such taxicabs shall be equipped with a modern taximeter and that the maximum and minimum charges shall be based upon the distance disclosed by said taximeter.

It is shown by the evidence that said taximeters cost from $150 to $750, and it is alleged that the equipment of said cars in such manner is impracticable in operation and prohibitive in expense and cost of installation.

Plaintiffs contend that the city is without power to enact an ordinance fixing rates, either under the Constitution, the statutes, its charter, or under its inherent police power.

Defendant contends that it is invested with such power under its charter, under the statutes, and under its general regulatory powers.

It is conceded that the power to fix rates for public service is primarily in the supreme sovereignty, the state, and that the authority of the city in that respect is dependent upon grant or delegation of the power or authority from the state.

In the case of State ex rel. Reardon v. Scales, Mayor, 21 Okla. 683, 97 P. 584, this court, through Mr. Justice Williams, in discussing the source and extent of power vested in the cities operating under charter or general legislative authority, said:

"Municipalities have no inherent jurisdiction to make laws or adopt regulations of government. They are governments of enumerated powers, acting by a delegated authority; so that, while the Legislature may exercise such powers of government coming within a proper designation of legislative power as are not expressly or impliedly prohibited, the local authorities can exercise those only which are expressly or impliedly conferred, and subject to such regulations or restrictions as are annexed to the grant. Cooley's Constitutional Limitations (7th Ed.) 265. All the power that a municipality has, or the citizens of a municipality may exercise, in framing a charter or an organic law for such city, is such as may be delegated to it by the Constitution of the state, or such authority pertaining to local government as may be conferred by the Legislature. The sovereign power rests in the people of the state in the aggregate, and not in any subdivision thereof. The Constitutional Convention that framed the organic law for the commonwealth was the fountain of political power, having derived the same from all the people of the state, and not from any particular subdivision or municipality thereof. From this fountain of political power flowed the Constitution, in which was delegated to municipalities, in the section under construction, certain authority. and such authority must be strictly construed. It is only the principal or sovereign, which is the state, that is presumed to have inherent power or authority."

In Grantham v. City of Chickasha, 156 Okla. 56, 9 P. (2d) 747, this court, by Mr. Justice McNeill, said:

"Municipal corporations can exercise only such powers of legislation as are given them by the lawmaking power of the state, and grants of such powers are strictly construed against the corporations and when any fairly reasonable doubt exists as to the grant of the power, such doubt is resolved by the

courts against the corporation, and the existence of the power is denied.

"A city council has no power to enact an ordinance exceeding its delegated statutory powers, by making a definition which would include persons or principles not clearly within the terms of the act granting such power."

In the case of Thurston, Co. Treas., v. Caldwell, 40 Okla. 206, 137 P. 683, this court, through Mr. Justice Kane, in considering the rights of a municipality operating under a charter form of government, used the following language:

"It has been held by this court that municipalities have no inherent jurisdiction to make laws or adopt regulations of government. All the power that a municipality has, or the citizens of a municipality may exercise, in framing a charter, or an organic law for such city, is such as may be delegated to it by the Constitution of the state, or such authority pertaining to local government as may be conferred by the Legislature. State ex rel. Reardon v. Scales, 21 Okla. 683, 97 P. 584. In Lackey v. State ex rel. Grant, 29 Okla. 255, 116 P. 913, this court, speaking generally of the power of cities under a charter form of government, followed the Missouri rule. Mr. Justice Hayes, who delivered the opinion for the court, quotes approvingly from Dillon on Municipal Corporations, vol. 1, sec. 63 (5th Ed.), as follows: 'Provisions of the freeholders' charter which are purely municipal in their character supersede provisions of the general laws which are inconsistent therewith. * * * Their charters do not prevent legislation upon matters not municipal in their character, but affecting the state at large, although such legislation necessarily applies to cities that have framed their own charters, and overrides express provisions contained therein. The words of the Missouri Constitution declaring that a city of prescribed population "may frame a charter for its own government" do not confer on the city the right, in framing its charter, to assume all the powers that the state may exercise within the city limits, but only powers incident to its municipality. These words mean that the city may frame a charter for the government of itself as a city, including all that is necessary or incident to the government of the municipality, but not all the power that the state has for the protection of the rights and the regulation of the duties of the inhabitants in the city, as between themselves. But the Legislature may, if it should see fit, confer on a city having a freeholders' charter power not necessary or incident to the city government. There are governmental powers, the just exercise of which is essential to happiness and well-being of the people of a particular city, yet which are not of a character essentially appertaining to the city government. Such powers the state may reserve to be exercised by itself, or it may delegate them to the city; but, until so delegated, they are reserved'."

In Mitchener v. City Commissioners of City of Okmulgee, 100 Okla. 98, 228 P. 159, it was held:

"The powers which a municipal corporation possesses and can exercise are limited to those powers which are by the act under which they are created and by the charter of the municipal corporation (1) expressly granted; (2) those impliedly granted and necessarily fairly incident to the powers expressly granted; or (3) those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable."

See, also, In re Lankford, 72 Okla. 40, 178 P. 673; M., K. & T. R. Co. v. Tulsa, 45 Okla. 382, 145 P. 398.

The determinative question is whether or not the power to fix rates has been delegated to the city by the state.

Section 7, art. 18, of the Constitution provides in part as follows:

"Nor shall the power to regulate the charges for public services be surrendered, and no exclusive franchise shall ever be granted."

In City of Pawhuska v. Pawhuska Oil & Gas Co., 64 Okla. 214, 166 P. 1058, it was held:

"The power to regulate the charges for public services by municipal corporations is the power which it was the intention of the framers of the Constitution should be exercised by the sovereign power only. Such power is inherent in the state, and is a necessary attribute of sovereignty. No specific authority having been conferred by the Constitution upon cities to fix and regulate the charges for gas in municipalities, the Legislature had the right to legislate thereon whenever in its judgment the public interest required such action. The power delegated to the city of Pawhuska to regulate charges for light and gas under section 593, Rev. Laws Okla. 1910, was such a grant of power as could be taken away from said city by the Legislature and conferred upon the Corporation Commission, as was done by chapter 93, Session Laws 1913. * * *

"Section 7, art. 18, of the Constitution of Oklahoma expressly prohibits the surrender by the legislative branch of the state government of the power to regulate the charges for public services."

In City of Sapulpa v. Oklahoma Natural Gas Co., 79 Okla. 196, 192 P. 224 (writ of error denied by Supreme Court of the

United States, 258 U. S. 608, 42 Sup. Ct. 316, 66 L. Ed. 788), it was held:

"The Corporation Commission's order changing the rate to be charged for gas provided for in a gas franchise granted is not void, because of depriving the city and its inhabitants of property and rights without due process of law, as the state, having granted the franchise through the city as its agent, has right to change the provisions by changing the rate through the Corporation Commission.

"A municipality, in granting a franchise to a gas corporation, which permits the use of the streets and alleys for the purpose of furnishing the citizens with gas, acts as a governmental agency of the state, and those cities in the Indian Territory prior to statehood were simply governmental agencies of the United States."

In Western Oklahoma Gas & Fuel Co. v. City of Duncan, 120 Okla. 206, 251 P. 37, it was held:

"Section 7, art. 18, of the Constitution of Oklahoma, expressly prohibits the surrender by the legislative branch of the state government of the power to regulate the charges for public services.

"Under the reservation contained in section 7, art. 18, of the Constitution of Oklahoma, the state, acting through its Corporation Commission, may revoke, enlarge, or set aside the former acts of its own municipalities, in the regulation of charges for public services since the adoption of the Constitution and the passage of the legislative act of March 25, 1913."

In City of Bartlesville v. Corporation Commission, 82 Okla. 160, 199 P. 396, it was held:

"Section 7, article 18, of the Constitution of Oklahoma, expressly prohibits the surrender by the state government of the power to regulate the charges for public services.

"The supreme Legislature of the state having delegated the exclusive power of regulating rates for gas furnished by public utilities to the Corporation Commission, the state has such a sovereign interest in this subject of legislation as to preclude the cities of the state from entering this field by charter provisions or otherwise."

And in the body of the opinion it is said:

"* * * It has been held that charters adopted under this section of the Constitution can only run current to and never counter to the general laws of the state in the following circumstances: Touching control of the free public school system, in Board of Education of City of Ardmore v. State, 26 Okla. 366, 109 P. 563; touching local taxes for police protection in Rogers v. Bass & Harbour Co., 64 Okla. 321, 168 P. 212; touching improvements of public streets and highways, in Coleman v. Frame, 26 Okla. 193, 109 P. 928; touching control of municipal police, in State v. Linn, 49 Okla. 526, 153 P. 826; touching taxation, in Thurston, Co. Treas., v. Caldwell, 40 Okla. 206, 137 P. 683. In all of these cases, and many others to the same effect which might be cited, it was held that, notwithstanding the municipal character of the subjects under consideration, the state has a sovereign interest in their management and control which cannot be interfered with by conflicting provisions of municipal charters. It seems to us that the reasoning upholding the ruling of the court in these cases inevitably leads to the same conclusion in the case at bar."

See, also, Galbreath v. Oklahoma Natural Gas Co., 130 Okla. 34, 264 P. 878; American Indian Oil & Gas Co. v. Collins & Co., 157 Okla. 49, 9 P. (2d) 438; South McAlester-Eufaula Telephone Co. v. State, 25 Okla. 524, 100 P. 962.

Moreover, it appears that the courts will carefully scrutinize the method and manner of delegating the power of the state to one of its subordinate instrumentalities. In the early case of Pioneer Tel. & Tel. Co. v. State, 33 Okla. 724, 127 P. 1073, the syllabus is:

"Power on the part of an incorporated city or town to fix municipal telephone rates can only be derived from the supreme Legislature by express grant or by necessary implication from powers expressly granted."

In the body of the opinion, touching the question of the grant of said power by general provisions relating to the power of municipalities, the court quotes with approval from the Supreme Court of the United States as follows:

"In Home Tel. Co. v. Los Angeles, 211 U. S. 265, 29 Sup. Ct. 50, 53 L. Ed. 176, the court said:

"'The power to fix, subject to constitutional limits, the charges of such a business as the furnishing to the public of telephone service, is among the powers of government, is legislative in its character, continuing in its nature, and capable of being vested in a municipal corporation. * * * The surrender, by contract, of a power of government, though in certain well-defined cases it may be made by legislative authority, is a very grave act, and the surrender itself, as well as the authority to make it, must be closely scrutinized. No other body than the supreme Legislature (in this case, the Legislature of the state) has the authority to

make such a surrender unless the authority is clearly delegated to it by the supreme Legislature. The general powers of a municipality or of any other political subdivision of the state are not sufficient. Specific authority for that purpose is required. This proposition is sustained by all the decisions of this court which will be referred to hereafter, and we need not delay further upon this point. It has been settled by this court that the state may authorize one of its municipal corporations to establish, by an inviolable contract, the rates to be charged by a public service corporation (or natural person) for a definite term, not grossly unreasonable in point of time, and that the effect of such a contract is to suspend, during the life of the contract, the governmental power of fixing and regulating the rates. Detroit v. Detroit Citizens' Street Railway Co., 184 U. S. 368, 382 (22 Sup. Ct. 410), 46 L. Ed. 592, 605; Vicksburg v. Vicksburg Waterworks Co., 206 U. S. 496, 508, 27 Sup. Ct. 762, 51 L. Ed. 1155, 1160. But for the very reason that such a contract has the effect of extinguishing pro tanto an undoubted power of government, both its existence and the authority to make it must clearly and unmistakably appear, and all doubts must be resolved in favor of the continuance of the power."

The court further quoted with approval from Missouri and Wisconsin, which we incorporate herein as pertinent to the questions presented in this appeal, as follows:

"In State ex rel. Garner v. Missouri & K. Tele. Co., 189 Mo. 83, 88 S. W. 41, the body of the opinion says:

"'The regulation of prices to be charged by a corporation intrusted with a franchise of a public utility character is within the sovereign power of the state that grants the franchise or that suffers it to be exercised within its borders, and that power may be with wisdom and propriety conferred on a municipal corporation. * * *'

"In that case, in the first paragraph of the syllabus, it was held: -

"'* * * That, while the enactment by the city of an ordinance fixing the maximum rate to be charged by telephone companies for telephone service in the city was expressly authorized by the charter, the state had not delegated to the city the power to exercise such authority in framing its charter, and the ordinance was void.'

"In State ex rel. Wisconsin Telephone Co. v. City of Sheboygan, 111 Wis. 23, 86 N. W. 657, the court, speaking of this power, said that it was inherent in the state and a necessary attribute of sovereignty; that it does not pass to a mere subdivision of government except by express grant or by necessary implication from other powers granted;

that every citizen holds his property subject to the proper exercise of this power, either by the state Legislature direct or by a public or municipal corporation to which the Legislature may delegate it. Citing 1 Dill. Mun. Corp. sec. 141. Speaking to the point there in question, the court said:

"'No express authority is given the city to regulate charges for telephone service, nor is there any express grant of power from which such authority can necessarily be implied. Construing the charter and the statute in the light of the rules of law stated, the city has authority to exercise its police power to protect the public from unnecessary obstructions, inconvenience, and danger and to determine in what manner the relator may erect its poles so as to accomplish this result. Michigan T. Co. v. Benton Harbor, 121 Mich. 512 (80 N. W. 386, 47 L. R. A. 104). It has no authority to impose other conditions. That power rests in the Legislature. The power to regulate charges was not included in or incidental to the power to regulate the manner of using streets. There is not the remotest relation between them'."

Bearing in mind the principles set forth in the above cases, we turn now to a consideration of the specific contentions of the parties.

The city contends that authority was delegated to it to fix said rates by the provisions of sections 6434, 6435, and 6436, O. S. 1931, which we quote in full:

"6434. Automobiles—Operation for Hire—Surety Bonds. Any person, firm or corporation may use automobiles or autobusses for the carrying of passengers for hire within any city of this state subject to the provisions hereinafter contained and reasonable regulation and control by the legislative authority of the city in which said business is conducted, which regulation may include the requiring of a policy of insurance or bond executed by a surety corporation authorized to do business in this state, as surety, covering liability in case of each automobile or autobus, the requiring of a definite schedule showing the route to be traversed and the time of all trips to be made, and which regulation may prohibit the carrying of passengers outside of said automobile or autobusses and may include any other requirement reasonable in its nature.

"6435. Reasonable Regulations—May Prohibit Paralleling of Street Car Line. No city shall have power to enact ordinances or regulations against the operating of automobiles or autobusses or jitney lines for carrying of passengers by charging an unreasonable occupation tax. No city shall prescribe, enact or enforce any ordinance or regulation concerning the business of operat-

ing such vehicles for hire which is wholly and clearly prohibitive or unreasonable in its character: Provided, any city may exclude the operation of automobiles for hire upon and along streets occupied and used by street car line paralleling same, and upon and along the first two streets on either side of a street occupied and used by a street car line; Provided this act shall not apply to automobiles and autobusses licensed by the Corporation Commission of Oklahoma to do a carrying business between towns and cities within the state: Provided also that the provisions of this act shall not apply to additions or parts of a city which are only served or connected by not more than two streets.

"6436. License Taxes—Ordinances. Any such person, firm or corporation furnishing such jitney service or using automobiles or autobusses for carrying passengers for hire shall be subject to the taxes or license fee for such vehicle as they use as are required by the laws of the state of Oklahoma, and to such reasonable occupation tax by the ordinances of such city and no other."

The above-quoted sections constitute amendments by substitution of sections 4531, 4532, and 4533, C. O. S. 1921, which sections had consideration by this court in the case of City of Tulsa v. Thomas, 89 Okla. 188, 214 P. 1070, wherein it is said:

"In view of the exercise of the supreme legislative body of this state in giving a statutory right to conduct the jitney business on the public highways, we believe that the municipal legislative bodies are limited to the provisions of that act, and could only be permitted to exercise reasonable regulation and control for the preservation of public safety as authorized by the statute."

The amended sections above quoted contain some specific provisions as to the power of the cities relating to said granted use of the streets, but we can find therein no express grant of power authorizing the city to regulate the fares for carrying passengers, nor any grant by necessary implication from any power expressly granted. On the other hand, the silence of the sections in that respect is ominous, especially when we consider the ease with which the Legislature, by a single clause in the act, could have definitely set the contentions of the parties at rest. Nor do we think that the words used therein, "and may include any other requirements reasonable in its nature," can properly be construed to grant this power which is said to be of grave concern to the state. As was said in Walton, Mayor, v. Donnelly, 83 Okla. 233, 201 P. 367:

"General words do not explain or amplify particular terms preceding them, but are themselves restricted and explained by the particular terms."

In view of our determination that the right to fix the fares of operators of said vehicles is inherently in the state, and that the delegation thereof must be by express grant from the legislative department, and that the Legislature, by virtue of its inherent right, has seen fit to exercise the sovereignty of the state by granting, under the above sections of the statutes, the right to its citizens to conduct a business of this character and to use the streets of its cities for such purpose, subject to certain specific provisions granting power to cities relating to regulations for the public safety, and other specific enumerated powers, we deem it immaterial to notice the other contentions of the parties as to the granting of power to fix rates by virtue of the provisions of the charter of Oklahoma City. We might mention, however, that no provision of the charter purports specifically to provide that the city shall have such power, but reliance is had only upon general provisions contained in the charter that the city shall have power "to enact and enforce all ordinances upon any subject," and a general welfare clause and other general provisions. It is conceded by the parties that when the sovereignty speaks on a subject, the city may speak only in harmony with it and not in discord.

We have not noticed herein the right of the city to fix a maximum charge for service under other powers of the municipality, for the reason that the question has been ignored by the parties.

For the reasons hereinabove set forth, the cause should be reversed and remanded, with directions to grant an injunction in conformity with the views herein expressed.

RILEY, C. J., and SWINDALL, ANDREWS, McNEILL, BAYLESS, BUSBY, and WELCH, JJ., concur. CULLISON, V. C. J., absent.