CITIES AND TOWNS A city charter provision that permits business transactions between the City Council of Muskogee and a member of that council does conflict with 21 O.S. 355-357 [21-355-357] (1971), and does not supercede a statewide prohibition of such dealings. A business enterprise subject to the control of a council member would be prohibited from dealings to the same extent as the member himself. Attempts to contract between the business substantially owned by the council member and the city would be rendered by 21 O.S. 356 [21-356] absolutely void and the members assenting to said agreement, would be personally liable therefor. The council member, who under the charter provision abstained from considering the contract between his business and the city would be subject to the criminal sanctions of 21 O.S. 357 [21-357] as would those members who voted to approve the contract. The Attorney General has considered your request for an opinion dated November 6, 1978, wherein you ask, in effect, the following question: "Assuming compliance with a city disclosure provision man dated by the city charter, may a business enterprise owned in substantial portion by a member of the city council, submit bids and furnish supplies to the charter city despite the prohibitions upon such a transaction contained in 21 O.S. 355 [21-355] — 21 O.S. 357 [21-357] (1971)." Title 11 O.S. 13-109 [11-13-109] (1977) provides: "Whenever a charter is in conflict with any law relating to municipalities in force at the time of the adoption and approval of the charter, the provisions of the charter shall prevail and shall operate as a repeal or suspension of the state law or laws to the extent of any conflict. (Emphasis added) Two questions are therefore threshold to the resolution of your inquiry: 1. Does Section 9:01 of the Muskogee City Charter conflict with 21 O.S. 355 [21-355] — 21 O.S. 357 [21-357] (1971)? 2. If the charter provision conflicts with the state statutes, does the former control the latter by reason of Article XVIII, Section 3(a), Oklahoma Constitution, and 11 O.S. 13-109 [11-13-109] (1977)? Section 9:01 of the Muskogee City Charter states: "Personal financial interest. Any City officer, employee, Council member or Mayor, who has a substantial financial interest, direct or indirect or by reason of ownership of stock in any corporation, in any contract with the City or in the sale of any land, material, supplies or services to the City or to a contractor supplying the City, shall disclose that interest in writing to the City Manager and shall refrain from voting upon or otherwise participating in his official capacity in the making of such sale or in the making or performance of such contract. Any such person who willfully conceals such a substantial financial interest or willfully violates the requirements of this Section shall be guilty of malfeasance in office or position and shall forfeit his office or position. Violation of this Section with the knowledge, express or implied, of the person or corporation contracting with or making a sale to the City shall render the contract or sale voidable by the City Manager or the City Council. Your letter informs us that the foregoing has been administratively interpreted since its adoption to permit City council members to submit bids, and thereupon provide materials and supplies to the City so long as the transaction was according to the above provision. 21 O.S. 355 [21-355] provides: "It shall be unlawful for any member of any board of county commissioners, city council or other governing body of any city, board of trustees of any town, board of directors of any township, board of education of any city or school district, to furnish, for a consideration any material or supplies for the use of said county, city, town, township, or school district." Title 21 O.S. 356 [21-356] (1971) states: "Any contract or purchase made in violation of the first preceding section shall be void, and no appropriation of public funds shall be made to pay the amount of same; but the members of the body voting for such contract or purchase shall be held personally liable for the amount thereof." 21 O.S. 357 [21-357] provides: "Any member of any public body, such as specified in the second preceding section, who shall be a party to such contract or purchase therein declared unlawful, or who shall receive any money, warrant, certificate, or other consideration thereunder, or who shall vote for or assent to any such contract or purchase, shall be punished by a fine of not less than fifty dollars, and imprisonment in the county jail not less than thirty days, or by a fine of not more than five hundred dollars, with imprisonment in the penitentiary not exceeding five years." Conflict between the city and state provisions is clearly evident. Where the statutes proscribe any contractual dealing between a city council member and the governed city, the charter provision allows such relationship provided the disclosure and non-participation requirements are met. Also, where the statutes make every contract between a council member and the city absolutely void, the charter, as interpreted, allows such contracts, provided the disclosure and voting requirements are met, and failure to meet said requirements merely renders the contract voidable at the option of the city manager or city council. Since conflict is clearly apparent between the statutes and the charter provision, it is necessary to resolve which provision controls. Article XVIII, Section3(a), Oklahoma Constitution, is the authority for the framing and adoption of charters by cities with populations in excess of 2,000 and defines the effect of such a charter, once properly adopted. In State v. Scales,21 Okl. 683, 97 P. 584 (1908), the Oklahoma Supreme Court held that Article XVIII, Section 3(a) was completely self-executing and did not require additional legislation to put it into effect. Title 11 O.S. 13-109 [11-13-109] (1977) is a part of the legislature's recent re-drafting of the municipal code. The section's predecessor was 11 O.S. 564 [11-564] (1971). In Lackey v. State, 116 P. 913 (1911), the Supreme Court stated in reference to 11 O.S. 564 [11-564]: ". . . It is clear that the foregoing statute intends to provide that wherever a freeholders' charter has been adopted under the provisions of the constitution, and conflicts with any law of the state relating to municipal matters of cities of the first class, that the provisions of such charter shall prevail. . . ." 116 P. at 917. After quoting the above language from Lackey, the Court stated in Oklahoma Railway Company v. Powell, 33 Okl. 737, 127 P. 1080 (1912): ". . . In other words, the effect of said statute was to declare the law as it already existed in the Constitution, merely setting out the same in greater detail than is contained in Article XVIII. . . ." 127 P. at 1084. The Attorney General is of the opinion that in re-drafting 11 O.S. 564 [11-564], the legislature did not intend to confer any more power to charter cities than those powers authorized under the Constitution, and that 11 O.S. 13-109 [11-13-109] (1977) should be afforded the same construction as was formerly given to 11 O.S. 564 [11-564]. In the recent case of Moore Funeral Homes, Inc. v. City of Tulsa, 552 P.2d 702 (1976), the Court quoted the following with approval from City of Wewoka v. Rodman,172 Okl. 630, 46 P.2d 334, 336 (1935): "The adoption of a freeholder charter immediately supersedes all state laws in conflict therewith, as to purely municipal affairs. Oliver v. Pickett, 79 Okl. 315 193 P. 526; Walton v. Donnelly, 83 Okl. 233, 201 P. 367; Caruth v State,101 Okl. 93, 223 P. 186. The adoption of the charter repeals all such laws that conflict with the charter. Berry v. McCormick, 91 Okl. 211, 217 P. 392. It follows that the moment the charter is adopted state laws as to purely municipal affairs, that conflict with the charter, are no longer state laws as to the particular locality." (Emphasis added) In City of Wewoka v. Rodman, supra, the Court stated at pages 334-335: ". . . The principle of demarcation governing the power of the Legislature over cities having freeholder charter is definite and clear. The city has full legislative power over matters that are purely municipal; the Legislature is supreme as to matters of general concern. The distinction between governmental and non-governmental powers found in many old cases was drawn in the attempt, prior to the freeholder charters, to give a measure of self-government to municipalities. The distinction has never been regarded of importance in the case of a freeholder charter city; there the question has shifted to whether the power is purely municipal, or whether there is a wider public interest. Where the power is purely municipal, the state has no control, even though the power be governmental in character." (Emphasis added) The Wewoka case thus supplies a further refinement to the purely municipal/general concern dichotomy, to-wit: whether a "wider public interest" exists such that a municipal concern is elevated to general concern. The issue thus devolves into the following question: Does the State as sovereign possess a wider public interest such that a charter city should be prevented from contracting with a member of that city's governing board for the city's necessary materials and supplies ? The language employed in 21 O.S. 355 [21-355], 21 O.S. 356 [21-356] and 21 O.S. 357 [21-357] [21-357] (1971) clearly reveals the intent of the legislature to prohibit all business dealings between the governing bodies of counties, cities, towns, etc. and members of such bodies. The evident purpose for the prohibition was to eliminate actual conflicts of interest and further eliminate any appearance of such conflicts of interest. The Attorney General is of the opinion that public confidence in public officials is a matter of such wide public interest that statutes designed by the legislature to prohibit conflicts of interest and thus preserve public confidence in state and local officials do not usurp a purely local matter. It is, therefore, the opinion of the Attorney General that your question- should be answered in the negative. A city charter provision that permits business transactions between the City Council of Muskogee and a member of that council does conflict with 21 O.S. 355 [21-355] — 21 O.S. 357 [21-357] (1971), and does not supercede the statewide prohibition of such dealings. A business enterprise subject to the control of a council member would be prohibited from such dealings to the same extent as the member himself. Attempts to contract between the business substantially owned by the council member and the city would be rendered by 21 O.S. 356 [21-356] absolutely void and the members assenting to said agreement would be personally liable therefor. The council member, who under the charter provision abstained from considering the contract between his business and the city would be subject to the criminal sanctions of 21 O.S. 357 [21-357] as would those members who voted to approve the contract. (CHARLES S. ROGERS) (ksg) ** SEE: OPINION NO. 90-540 (1990) (UNPUBLISHED) ** ** SEE: OPINION NO. 87-530 (1987) (UNPUBLISHED) **